**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**December 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

STEPHEN THEODORE GLADSTONE,

    Plaintiff - Appellant,

v.

JUDGE REED OWENS; JUDGE KAREN
ANN ROMEO,

    Defendants - Appellees.

No. 25-1345
(D.C. No. 1:25-CV-02519-RTG)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Stephen Gladstone appeals the district court's denial of his motions for

injunctive relief. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm.

I.

On August 13, 2025, Gladstone filed pro se a civil complaint. In his complaint,

Gladstone alleged that two Colorado state judges deprived him of his constitutional

rights by ruling against him in several state court proceedings. Specifically, he

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Federal Rules of Appellate Procedure 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rules of Appellate Procedure 32.1 and 10th Cir. R. 32.1.

alleged that the first judge, who presided over a child custody proceeding, violated Gladstone's due process rights and right to equal protection by (1) issuing a no-contact order without clear evidence; (2) disregarding evidence that Gladstone was a fit parent; (3) participating in a coordinated effort to sever the father-child relationship by, among other things, suppressing exculpatory evidence and allowing perjury; and (4) coercing Gladstone into therapy with providers who had conflicts of interest. He alleged that the second judge, who presided over proceedings involving property ownership, violated his right to a jury trial by taking "a series of improper procedural actions." ROA at 12.

Gladstone filed a contemporaneous Motion for Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion") with his complaint. In his TRO/PI Motion, Gladstone asked the district court to (1) "suspend enforcement of the January 31, 2025 unconstitutional no-contact parenting order . . ., entered without due process and causing ongoing harm to the parent-child relationship and the emotional well-being of the minor child" and (2) "stay any partition proceedings, including orders of sale or division of property, until the unjust enrichment/fraudulent ownership claim is resolved by jury verdict." *Id.* at 19.

Gladstone later filed an Emergency Motion to Remove Improper ACP Enrollment ("ACP Motion"), in which he requested the immediate removal of his child and his child's mother from the Colorado Address Confidentiality Program ("ACP") and reinstatement of reunification therapy.

2

On August 27, 2025, the district court issued an order ("Order") denying Gladstone's TRO/PI Motion. The court found that Gladstone had not shown a substantial likelihood of prevailing on the merits on any of his claims. It provided three rationales for its conclusion. First, it reasoned that Gladstone's claims challenging the state court proceedings may be barred by the abstention principles of *Younger v. Harris*, 401 U.S. 37 (1971). Second, it reasoned that, if Gladstone sought to overturn final state court orders and judgments, the *Rooker-Feldman* doctrine precluded the district court from adjudicating Gladstone's claims challenging the constitutionality of those orders. Third, and finally, the court reasoned that Gladstone's claims, which were asserted against two state judges, were barred by the doctrine of absolute judicial immunity.

On August 28, 2025, the district court issued a minute order ("Minute Order") denying Gladstone's ACP Motion. Noting that the ACP Motion "appear[ed] to request injunctive relief," the court denied the motion "for the same reasons as set forth in the Court's August 27, 2025 [Order]." ROA at 88.

Gladstone filed two motions seeking reconsideration. Before the district court ruled on those motions, Gladstone timely filed this appeal from the district court's denial of his motions for injunctive relief in the Order and the Minute Order.[1] Following this court's abatement, the district court denied the motions to reconsider.

---

[1] Gladstone does not appeal the district court's ruling on his request for a TRO. Indeed, a district court's denial of a TRO is ordinarily not appealable. *See Tooele Cnty. v. United States*, 820 F.3d 1183, 1186 (10th Cir. 2016) ("Temporary restraining orders are not ordinarily appealable, but preliminary injunctions are appealable.");

Gladstone moved for a stay pending appeal in both the district court and many times before this court. Each motion was unsuccessful. He has four motions pending before this court: (1) "Emergency Motion for Injunction Pending Appeal" (ECF No. 28); (2) "Second Emergency Motion for Injunction Pending Appeal" (ECF No. 29); (3) "Emergency Motion for Preliminary Injunction Pending Appeal" (ECF No. 35); and (4) "Motion for Judicial Notice of Post-Record Agency Conduct Relevant to Ongoing Constitutional Harm" (ECF No. 31).

II.

Before addressing the merits of Gladstone's arguments, we first clarify which district court decisions are before us on appeal. The relevant timeline is as follows:

| | |
|---|---|
| August 27, 2025: | district court issues the Order denying Gladstone's TRO/PI Motion |
| August 28, 2025: | Gladstone files a motion to reconsider the district court's Order |
| August 28, 2025: | district court issues the Minute Order denying Gladstone's ACP Motion |
| August 28, 2025: | Gladstone files a motion to reconsider the district court's Minute Order |
| September 2, 2025: | Gladstone files a notice of appeal |
| September 9, 2025: | Tenth Circuit court files an order abating Gladstone's appeal pending the district court's disposition of Gladstone's motions for reconsideration |

*Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171, 1173 n.1 (10th Cir. 2017) ("It is well established that absent extraordinary circumstances a litigant may not appeal a district court's denial of a temporary restraining order.").

4

September 11, 2025: district court issues an order denying motions for reconsideration

We treat Gladstone's motions for reconsideration as motions to alter or amend the district court's judgments under Rule 59(e) of the Federal Rules of Civil Procedure. *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (explaining that a motion for reconsideration is treated as a 59(e) motion if it is filed within Rule 59's filing deadline); Fed. R. Civ. P. 59(b) (providing that Rule 59 motions must be filed within 28 days of the district court's entry of judgment). Under Federal Rule of Appellate Procedure 4, "[a] party intending to challenge an order disposing of [a Rule 59 motion] . . . must file a notice of appeal, or an amended notice of appeal . . . within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(B)(ii). "Put differently, [w]hen an appellant challenges an order ruling on a [Rule 59 motion], a new or amended notice of appeal is necessary." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1160 (10th Cir. 2023) (internal quotation marks omitted).

Here, Gladstone filed a notice of appeal before the district court ruled on his motions for reconsideration, and he did not file "a new or amended notice of appeal" after the district court ruled on those motions. *See id.* Therefore, the district court's order denying Gladstone's motions for reconsideration is not before us on appeal. The only district court rulings we consider on appeal are the Order and the Minute Order denying Gladstone's requests for injunctive relief.

III.

This court reviews a district court's denial of a motion for a preliminary injunction for abuse of discretion. *Schrier v. Univ. of Colo*, 427 F.3d 1253, 1258 (10th Cir. 2005). "The standard for abuse of discretion is high." *Id.* (quotation marks omitted). A district court abuses its discretion when it issues a ruling that is "based on an erroneous view of the law or on a clearly erroneous assessment of the evidence," or acts in a manner that is "arbitrary, capricious, or whimsical." *Amoco Oil Co. v. EPA*, 231 F.3d 694, 697 (10th Cir. 2000) (internal quotation marks omitted).

The grant of a preliminary injunction "is the exception rather than the rule." *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (quotation marks omitted). Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier*, 427 F.3d at 1258. To obtain a preliminary injunction, the movant must show (1) he "is substantially likely to succeed on the merits," (2) he "will suffer irreparable injury if the injunction is denied," (3) his "threatened injury outweighs the injury the opposing party will suffer under the injunction," and (4) "the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

Construing Gladstone's pro se brief[2] liberally, as we must, we discern four challenges to the district court's rulings denying Gladstone's TRO/PI Motion and ACP Motion.

First, Gladstone argues that the district court incorrectly applied the law in its orders denying Gladstone's motions for injunctive relief. Specifically, he argues that the court erred by failing to apply the four-factor test set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). This argument lacks merit. *Winter* provides that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. In the Order, the district court correctly identified this four-part test and applied it to Gladstone's motions, concluding that Gladstone was not entitled to injunctive relief because he did not show "a substantial likelihood of prevailing on the merits in this proceeding."[3] ROA

---

[2] Together with Gladstone's opening brief, we also consider his Notice of State Exhaustion, which he filed with this court on November 5, 2025. In this filing, Gladstone provided additional arguments related to the merits of his underlying claims.

[3] Although the court did not analyze all four factors of the *Winter* test, this was not legal error. Because a movant must satisfy his burden as to each preliminary injunction factor, Gladstone's failure to show a likelihood of success on the merits is fatal to his requests for injunctive relief. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016); *see also Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277 (10th Cir. 2022) ("An injunction can issue only if each factor is established." (citing *Winter*, 555 U.S. at 23–24)). Thus, the district court did not err by declining to reach the latter three factors of the test.

at 75. Accordingly, there is no merit to Gladstone's argument that the district court incorrectly applied the law in denying his requests for injunctive relief.

Second, Gladstone argues that the district court erred by failing to conduct a separate *Winter* analysis in the Minute Order, which denied Gladstone's ACP Motion "for the same reasons as set forth" in the Order denying his TRO/PI Motion. ROA at 88. Gladstone asserts that the ACP Motion "must be adjudicated independently" because the ACP harms him "independently of any custody order." Appellant's Br. at 10–11. But, as explained above, the district court concluded in its Order that Gladstone failed to show a likelihood of success on the merits of his claims. Because Gladstone failed to satisfy the first prerequisite for injunctive relief, the district court did not need to reach the question of whether Gladstone would suffer injury unless the injunction issues. Accordingly, the district court did not abuse its discretion in disposing of Gladstone's ACP Motion in the Minute Order without analyzing the purported harmful effects of the ACP.

Third, Gladstone argues that the district court erred by failing to state the findings of fact it relied on in denying his motions for injunctive relief, as required under Federal Rule of Civil Procedure 52(a). Rule 52(a)(1) states that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." The requirements are the same for interlocutory injunctions. *See* Fed. R. Civ. P. 52(a)(2). Under the rule, "a district court must sufficiently indicate the factual basis for its conclusions as to ultimate facts, indicate the legal standard against which it has measured the evidence, and

8

broadly cover all material issues." *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 782 (10th Cir. 2009).

But here, the district court did not resolve any issues of fact in considering Gladstone's motions for injunctive relief. Rather, the court's analysis was based entirely on questions of law: namely, whether Gladstone's claims were barred by the *Younger* abstention doctrine, the *Rooker-Feldman* doctrine, and the doctrine of absolute judicial immunity. And the district court denied Gladstone's motions not because it made findings of fact adverse to Gladstone, but because it found that the court lacked jurisdiction to consider Gladstone's claims. Thus, the district court was not required to enter formal findings of fact under Rule 52(a). *See Tyson Foods*, 565 F.3d at 782 (explaining that Rule 52(a) requires findings only as to the "ultimate facts" supporting the court's conclusions of law); *see also Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir. 1965) ("[I]f there is no dispute between the parties about the facts, allegations of the complaint may be accepted as true, thus eliminating the necessity of formal findings."); *Beacon Hill CBO, II, Ltd. v. Beacon Hill Asset Mgmt. LLC*, 314 F. Supp. 2d 205, 209 (S.D.N.Y. 2003) (explaining that Rule 52(a) does not require factual findings when a court's consideration of a preliminary injunction motion "was based entirely on legal questions, accepting the facts as alleged in the complaint").

Fourth, and finally, Gladstone challenges the district court's conclusion that he failed to show a substantial likelihood of success on the merits. Gladstone's merits

argument rests on his assertion that neither the *Younger* abstention doctrine nor the *Rooker-Feldman* doctrine precludes his claims.

The *Younger* abstention doctrine requires a district court to abstain from hearing a plaintiff's claims when

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (quotation marks omitted).

We agree with the district court that these requirements are satisfied in this case to the extent that Gladstone's custody and property proceedings in Colorado state court remain ongoing.[4] Such proceedings undoubtedly implicate important state interests. *See Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005) ("It is well-established that federal courts lack jurisdiction over 'the whole subject of the domestic relations of husband and wife, and parent and child.'" (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Bank of N.Y. v. Mehner*, 375 F. Supp. 2d 1316, 1319 (D.N.M. 2005) ("Federal courts are reluctant to

---

[4] It is not clear from the record whether Gladstone's state proceedings are "ongoing" for *Younger* purposes. In his complaint, Gladstone indicates that these proceedings are ongoing. But in his Notice of State Exhaustion, Gladstone states that "all available state judicial and administrative remedies have been fully pursued and exhausted." ECF 36 at 2–3. However, we need not resolve this question because, as explained below, if the proceedings are not ongoing, Gladstone's claims are barred by the *Rooker-Feldman* doctrine.

get involved in local real estate matters, which are generally state matters."). Further, the Colorado state court proceedings offer Gladstone an adequate opportunity to litigate any federal constitutional issues that may arise; indeed, Gladstone concedes that he has raised such issues in the Colorado state proceedings.

Gladstone does not dispute that these requirements are satisfied. Instead, he argues that the *Younger* doctrine does not apply because this case does not fit into one of the "three 'exceptional' categories" of cases that warrant *Younger* abstention. Appellant's Br. at 11. We disagree. This court has recognized that the *Younger* abstention doctrine applies to three categories of state cases: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 670 (10th Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013)). We have held that the third category is present when a federal case "involve[s] requests to directly or indirectly thwart state court compliance processes." *Id.* at 671. In other words, *Younger* abstention is required "when the relief requested from the federal court would enjoin or otherwise interfere with" ongoing state proceedings. *Id.* at 672. Here, Gladstone asked the district court to vacate the no-contact parenting order issued in his state child custody proceeding and stay the partition proceedings pending before the state court. Assuming that these proceedings are ongoing, Gladstone's requested relief would unquestionably interfere

11

with ongoing state proceedings. We therefore conclude that the district court did not abuse its discretion in concluding that Gladstone's claims may be barred by *Younger*.

Next, Gladstone argues that the district court erred by concluding that, if Gladstone's state proceedings have concluded, "the Court lacks jurisdiction to adjudicate Plaintiff's claims challenging the constitutionality" of final orders and judgments issued by the state courts under the *Rooker-Feldman* doctrine. *See* ROA at 75–76. Gladstone argues that the *Rooker-Feldman* doctrine does not bar his claim because he "asserts an independent federal claim" under 42 U.S.C. § 1983. Appellant's Br. at 11.

The *Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *K. A. v. Barnes*, 134 F.4th 1067, 1074 (10th Cir. 2025) (internal quotation marks and citation omitted). In other words, *Rooker-Feldman* "bars a losing party's claim that the state judgment itself violates the loser's federal rights." *Id.* (internal quotation marks and citation omitted). Importantly, the fact that a plaintiff asserts an independent federal claim under 42 U.S.C. § 1983 does not preclude application of the *Rooker-Feldman* doctrine. "It is well-settled . . . that an unsuccessful state litigant cannot challenge an adverse state judgment and circumvent the rule of *Rooker-Feldman* simply by bringing a constitutional claim under the civil rights statutes." *Atkinson-Bird v. Utah, Div. of Child & Fam. Servs.*, 92 F. App'x 645, 647 (10th Cir. 2004) (internal

12

quotation marks omitted). Indeed, "the *Rooker-Feldman* doctrine is most frequently applied in the context of civil rights actions." *Id.*

In this case, Gladstone explicitly asked the district court to vacate orders entered against him by Colorado state courts, asserting that those orders deprived him of his constitutional rights. Since "an action to void a state-court judgment is a quintessential case for application of *Rooker-Feldman*," *K. A.*, 134 F.4th at 1074, the district court was correct in concluding that, if the state court proceedings have concluded, the district court lacks jurisdiction to adjudicate Gladstone's claims. The fact that Gladstone asserts an independent federal claim under 42 U.S.C. § 1983 does not change this analysis. At bottom, adjudicating Gladstone's claims would require the district court to relitigate the various issues reached in Gladstone's state court proceedings and consider whether to reverse or modify the state court judgments. *Cf. Anderson v. Colorado*, 793 F.2d 262, 264 (10th Cir. 1986) (holding that the district court lacked jurisdiction to hear a plaintiff's § 1983 challenge alleging that a child custody decision violated his constitutional rights because the "lawsuit essentially [sought] to undo the custody decision of the Colorado state court"). Therefore, the district court did not abuse its discretion in concluding that Gladstone's claims may be barred by the *Rooker-Feldman* doctrine.

Accordingly, we find no abuse of discretion in the district court's conclusion that Gladstone failed to demonstrate a likelihood of success on the merits.[5]

---

[5] We disagree with the district court's conclusion that "the claims asserted against [state court judges] are barred by absolute judicial immunity." ROA at 76.

IV.

Because Gladstone has not shown that the district court abused its discretion in denying his motions for injunctive relief, we affirm. We deny as moot Gladstone's "Emergency Motion for Injunction Pending Appeal" (ECF No. 28), his "Second Emergency Motion for Injunction Pending Appeal" (ECF No. 29), and his "Emergency Motion for Preliminary Injunction Pending Appeal" (ECF No. 35). We also deny his "Motion for Judicial Notice of Post-Record Agency Conduct Relevant to Ongoing Constitutional Harm" (ECF No. 31). Although government records are generally an acceptable source for taking judicial notice, *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 (10th Cir. 2019), Gladstone did not provide such records in his motion. Instead, he provided a copy of a demand letter he wrote requesting certain official records from a state agency. This is not a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

"[J]udicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). In the instant case, Gladstone seeks only injunctive relief against the state court judges, not monetary damages, so his claims are not barred by the doctrine of judicial immunity. *See id.* But because we agree with the district court that Gladstone's claims are barred by the *Younger* or *Rooker-Feldman* doctrines, this error is harmless.